Slip Op. 09-127

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |  |
|---|---|---|---|
| SIDENOR INDUSTRIAL SL, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | Before: | WALLACH, Judge |
| v. | : | Court No.: | 07-00307 |
| | : | | |
| UNITED STATES, | : | | |
| | : | | |
| Defendant, | : | **PUBLIC VERSION** | |
| | : | | |
| and | : | | |
| | : | | |
| CARPENTER TECHNOLOGY CORP., | : | | |
| et al., | : | | |
| | : | | |
| Defendant-Intervenors. | : | | |
|  | : | | |

[Plaintiff's Motion for Judgment on the Agency Record is DENIED and the Agency's Determination is AFFIRMED.]


Dated:     October 30, 2009


Riggle & Craven (David J. Craven and David A. Riggle) for Plaintiff Sidenor Industrial SL.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (L. Misha Preheim); and Deborah King, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant United States.

Kelley Drye & Warren LLP (Mary T. Staley and Grace W. Kim) for Defendant-Intervenors Carpenter Technology Corporation, Electralloy Corporation, a Division of G.O. Carlson, Inc., and Valbruna Slater Stainless, Inc.

## OPINION

**Wallach, Judge:**

## I
## INTRODUCTION

This action arises out of the administrative review of an antidumping duty order conducted by the United States Department of Commerce ("Commerce").  Plaintiff Sidenor Industrial SL ("Sidenor") challenges Commerce's decision to apply adverse facts available ("AFA") to calculate Sidenor's dumping margin.  Alternatively, Sidenor challenges the AFA dumping margin selected by Commerce.  In addition, Sidenor argues that Commerce's denial of its request to report its cost data on a fiscal year basis, rather than for the period of review, was an abuse of discretion.

This court has jurisdiction pursuant to 28 U.S.C. § 1581(c).  Because Commerce's decisions are supported by substantial evidence and otherwise in accordance with law, Commerce's determination in <u>Stainless Steel Bar from Spain: Final Results of Antidumping Duty Administrative Review</u>, 72 Fed. Reg. 42,395 (August 2, 2007) ("<u>Final Results</u>") is affirmed.

## II
## BACKGROUND

Commerce imposed an antidumping duty order on stainless steel bar from Spain in 1995. <u>Amended Final Determination and Antidumping Duty Order: Stainless Steel Bar from Spain</u>, 60 Fed. Reg. 11,656 (March 2, 1995) ("<u>AD Order</u>").  In March 2006, Commerce published notice of the opportunity to request an administrative review of the <u>AD Order</u> for the period of review beginning March 1, 2005 and ending February 28, 2006. <u>Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review</u>, 71

2

Fed. Reg. 10,642 (March 2, 2006).  In response to this notice, Sidenor requested that Commerce

conduct an administrative review of its U.S. sales of stainless steel bar. Letter from David J.

Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce (March 28, 2006),

Public Record ("P.R.") 1.  Commerce thereafter initiated an administrative review of Sidenor's

sales of stainless steel bar for the period of review. Initiation of Antidumping and Countervailing

Duty Administrative Reviews, 71 Fed. Reg. 25,145 (April 28, 2006), P.R. 2.

Commerce sent Sections A, B, and C of its antidumping duty questionnaire to Sidenor on

May 5, 2006.[1]  Sidenor responded with a letter dated May 19, 2006; in the letter, Sidenor

requested that Commerce clarify certain aspects of the questionnaire. Letter from David J.

Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce (May 19, 2006), P.R.

8.  Sidenor also requested authorization from Commerce to report its cost of production and

constructed value data for its 2005 fiscal year rather than for the period of review (March 1, 2005

through February 28, 2006). Id.  In responding to Sidenor's requests, Commerce expressed its

willingness to consider authorizing Sidenor to report its cost data on the basis of the 2005 fiscal

year, provided that Sidenor demonstrate that such a shift in the cost reporting would not distort

costs for the period of review. Letter from Laurie Parkhill, Office Director, Department of

Commerce, to David J. Craven, Riggle & Craven (May 30, 2006), P.R. 12.  Commerce requested

---

[1]  The antidumping questionnaire is designed to elicit all information necessary to determine whether a
respondent is dumping and, if so, to calculate the dumping margin. See Department of Commerce, Antidumping
Manual (February 10, 1998) ("AD Manual"), Chap. 6 at 11.  The antidumping questionnaire normally consists of
five sections (A through E) and several appendices. Id., Chap. 4 at 2-8.  Section A is designed to elicit general
information about a respondent's corporate structure and business practices as well as information concerning the
allegedly dumped goods. Id., Chap. 4 at 2.  Section B is designed to assist Commerce in determining the normal
value of the goods; it requires respondents to list sales transactions of the subject goods in the home country market
(or a third-country market, where appropriate). Id., Chap. 4 at 3.  Section C is designed to assist Commerce in
determining the U.S. price against which normal value is compared. Id., Chap. 4 at 5.  Section D inquires about the
costs of producing the goods. Id.  Section E inquires about the value added in the U.S. to the goods prior to delivery
to unaffiliated U.S. customers, if any. Id., Chap. 4 at 6.
.

that Sidenor answer four specific questions, the answers to which would assist Commerce in determining whether a shift in the cost reporting period would lead to distortion in the data. Id. Sidenor "did not provide the specific information" that Commerce requested. Memorandum from Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, to David M. Spooner, Assistant Secretary for Import Administration, Re: Issues and Decision Memorandum for the Antidumping Duty Administrative Review of Stainless Steel Bar from Spain for the Period of Review March 1, 2005, through February 28, 2006 (July 26, 2007), P.R. 84 ("Final Decision Memo"), 2.

Subsequently, Commerce published the preliminary results of this administrative review. Stainless Steel Bar from Spain: Preliminary Results of Antidumping Duty Administrative Review, 72 Fed. Reg. 14,522 (March 28, 2007) ("Preliminary Results"). In the Preliminary Results, Commerce found that the statutory criteria for application of an AFA rate to Sidenor were met. Id. at 14,522-24. Commerce selected an AFA rate of 62.85%, the highest rate established by Commerce in the initial less-than-fair-value ("LTFV") investigation. Commerce determined that this rate remained both reliable and relevant. Id. at 14,524.

Sidenor filed a case brief challenging Commerce's conclusions with respect to its questionnaire responses and Commerce's application of total adverse facts available. Commerce rejected Sidenor's arguments. See Final Decision Memo. Sidenor was assigned a final AFA rate of 62.85%. Final Results at 42,395.

4

# III
# STANDARD OF REVIEW

The court will hold unlawful a determination by Commerce resulting from an administrative review of an antidumping duty order if that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); see 19 U.S.C. § 1516a(a)(2)(B)(iii).

A determination is supported by substantial evidence if the record contains "evidence that a reasonable mind might accept as adequate to support a conclusion." Cleo Inc. v. United States, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S. Ct. 456, 95 L. Ed. 456 (1951)).  While the court must consider contradictory evidence, "the substantial evidence test does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record." Id. (citing Universal Camera Corp., 340 U.S. at 487-88); see also Am. Silicon Techs. v. United States, 261 F.3d 1371, 1375-76 (Fed. Cir. 2001); U.S. Steel Group v. United States, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996).

To determine whether Commerce's interpretation and application of the antidumping statute at issue is otherwise "in accordance with law," the court must conduct the two-step analysis articulated by the Supreme Court in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  Under the first step of the Chevron analysis, the court must ascertain "'whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of

5

Congress.'" <u>Wheatland Tube Co. v. United States</u>, 495 F.3d 1355, 1359 (Fed. Cir. 2007) (quoting <u>Chevron</u>, 467 U.S. at 842-43).

The court reaches the second step of the <u>Chevron</u> analysis only "'if the statute is silent or ambiguous with respect to the specific issue.'" <u>Id.</u> (quoting <u>Chevron</u>, 467 U.S. at 843). Under this second step, the court must evaluate whether Commerce's interpretation "is based on a permissible construction of the statute." <u>Chevron</u>, 467 U.S. at 843. The agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation. <u>See</u> <u>Zenith Radio Corp. v. United States</u>, 437 U.S. 443, 450, 98 S. Ct. 2441, 57 L. Ed. 2d 337 (1978) (citations omitted). The court must defer to Commerce's reasonable interpretation of a statute even if it might have adopted another interpretation had the question first arisen in a judicial proceeding. <u>Id.</u> (citations omitted).

## IV
## DISCUSSION

Sidenor challenges three decisions made by Commerce during the course of the administrative review. First, Sidenor argues that Commerce's denial of its request to report its cost data on a fiscal year basis, rather than for the period of review, was an abuse of discretion. Second, Sidenor contests Commerce's decision to apply adverse facts available to calculate its dumping margin. Third, Sidenor argues that even if Commerce's decision to calculate its dumping margin on the basis of adverse facts available is affirmed, the margin selected by Commerce should be lower. Each of Commerce's determinations survives these challenges. Commerce reasonably exercised its discretion to deny Sidenor's request to submit information in a form different than that originally requested. Commerce's decision to calculate Sidenor's dumping margin on the basis of adverse facts available is supported by substantial evidence and

in accordance with law.  The AFA rate selected by Commerce is supported by substantial

evidence and in accordance with law.

**A**
**Commerce Reasonably Exercised Its Discretion To Deny Sidenor's Request To Submit**
**Information In A Form Different Than That Originally Requested**

Sidenor argues that Commerce's denial of its request to report its cost data on a fiscal

year basis, rather than for the period of review, was an abuse of discretion. <u>See</u> Motion for

Judgment on the Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the U.S. Court

of International Trade ("Plaintiff's Motion") at 13.  Commerce generally allows a respondent to

shift its cost-reporting period if the respondent shows that such a shift will not distort the costs

for the period of review. <u>Final Decision Memo</u> at 2.  Sidenor did not make that showing. <u>Id.</u> at 3.

After receiving Sidenor's request for authorization to shift the cost-reporting period from

the period of review to the fiscal year, Commerce responded that it "may agree to Sidenor's

request . . . only if [Commerce] can establish that the shifted costs will not distort the costs for

the period of review." Letter from Laurie Parkhill, Office Director, Department of Commerce, to

Sidenor Industrial Ltd. c/o Donald J. Craven (May 20, 2006), P.R. 12.  To that end, Commerce

asked that Sidenor respond to four specific questions. <u>Id.</u>  Sidenor did not respond to these

questions. <u>Final Decision Memo</u> at 2.  Two months later, Commerce followed up with a second

letter reiterating its request. <u>Id.</u>  Although Sidenor responded, it failed to provide the information

that Commerce requested. <u>Id.</u>  Commerce thereafter concluded that "without Sidenor's response .

. . , we could not determine whether a shift in the reporting period was reasonable." <u>Id.</u>

Accordingly, Commerce did not abuse its discretion in denying Sidenor's request.

7

**B**
**Commerce's Decision To Calculate Sidenor's Dumping Margin On The Basis Of Adverse Facts Available Is Supported By Substantial Evidence And In Accordance With Law**

When Commerce uses the phrase "adverse facts available," it is referring to a two-step procedure: (1) resort to "facts otherwise available" when information it has requested is unavailable or deficient, 19 U.S.C. § 1677e(a); and (2) use of "adverse inferences" in selecting from the "facts otherwise available" when "an interested party has failed to cooperate by not acting to the best of its ability," 19 U.S.C. § 1677e(b). See Ad Hoc Shrimp Trade Action Committee v. United States, 616 F. Supp. 2d 1354, 1368-69 (CIT 2009) (citing Jinan Yipin Corp v. United States, 526 F. Supp. 2d 1347, 1353 n.7 (CIT 2008)). Sidenor argues that Commerce erred with respect to both steps.

First, Sidenor contends that the requisite statutory criteria for determinations on the basis of "facts otherwise available" have not been met. Second, Sidenor contends that the application of adverse inferences is inappropriate because it acted to the best of its ability in responding to Commerce's requests for information. Lastly, Sidenor argues that Commerce is not authorized to calculate a respondent's dumping margin on the basis of adverse facts available unless it has conducted a verification of the information submitted during the course of the administrative review.

**1**
**Commerce's Resort To "Facts Otherwise Available" Was Appropriate Because Sidenor Did Not Provide The Requested Information**

Sidenor contends that the requisite statutory criteria for determinations on the basis of "facts otherwise available" have not been met. Plaintiff's Motion at 15. The relevant statute directs Commerce to use the facts otherwise available in making determinations in antidumping proceedings when any one of the following conditions is met:

8

> (1) necessary information is not available on the record; or (2) an interested party . . . (A) withholds information that has been requested by [Commerce] . . . , (B) fails to provide such information by the deadlines for submission or in the form and manner requested . . . , (C) significantly impedes a proceeding . . . , or (D) provides such information but the information cannot be verified . . . .

19 U.S.C. § 1677e(a). Before using the facts otherwise available, however, Commerce is required to notify the responding party of the deficiency and, to the extent practicable, permit that party to remedy or explain the deficiency. Id. § 1677m(d). Commerce must consider information submitted by an interested party if the following five criteria are met:

> (1)    the information is submitted by the deadline established for its submission,
> (2)    the information can be verified,
> (3)    the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,
> (4)    the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by [Commerce] . . . with respect to the information, and
> (5)    the information can be used without undue difficulties.

Id. § 1677m(e). If, however, Commerce finds the party's explanation of the deficiency either untimely or insufficient, and one of the five criteria in 19 U.S.C. § 1677m(e) is not met, Commerce can disregard all or part of the original and subsequent responses. Id. § 1677m(d).

Here, Commerce determined that four of the conditions enumerated in 19 U.S.C. § 1677e were present; the existence of only one condition is sufficient for Commerce to make a determination on the basis of facts otherwise available. According to Commerce, "necessary information was not available on the record and Sidenor withheld critical information requested by Commerce, failed to provide information in the form and manner requested, and significantly impeded the proceeding." Defendant's Memorandum in Opposition to Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record ("Defendant's Response") at 14. These findings are supported by substantial evidence.

When determining normal value, Commerce normally calculates costs "based on the records of the exporter . . . , if such records are kept in accordance with the generally accepted accounting principles of the exporting country . . . and reasonably reflect the costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1)(A). In order to determine whether the cost data provided by an exporter is reasonably allocated to the subject merchandise, Commerce first "ensure[s] that the aggregate amount of the reported costs captures all costs incurred by the respondent in producing the merchandise under consideration." Memorandum from Mark Todd, Senior Accountant, Department of Commerce, to the file (March 22, 2007), Confidential Record ("C.R.") 29 ("AFA Memo"), 2. Commerce does so by reconciling the cost data submitted by the respondent to the respondent's audited financial statements. Id. This court has recognized that "Commerce must ensure that [a respondent's] reported costs capture all of the costs incurred by the respondent in producing the subject merchandise" before it can appropriately use that respondent's cost allocation methodology. Myland Indus., Ltd. v. United States, 2007 WL 3120293, *6 (CIT 2007). Sidenor's failure to furnish to Commerce (1) actual documentation from its normal books and records to support its reported direct materials cost and (2) a reconciliation between its sales and production figures made it impossible for Commerce to do so.

Sidenor claimed that it calculated its direct material costs by subtracting the nonmaterial costs from the total production costs for the final products. Section D Antidumping Questionnaire, Response of Sidenor Industrial SL (September 19, 2006), C.R. 12, D-24 to D-25. Sidenor did not, however, provide Commerce with appropriate documentation to support this assertion.

10

Commerce provided Sidenor with the opportunity to remedy or explain the deficiencies in its response, as required by 19 U.S.C § 1677m(d), by issuing three supplemental questionnaires requesting a proper cost reconciliation and supporting information for the direct materials cost for the merchandise under consideration. Final Decision Memo at 10.  Commerce explained that the purpose of its request "was to obtain support from Sidenor's normal books and records for the information included in [certain of Sidenor's] exhibits." Id. at 5.  Yet, Sidenor "failed to provide . . . supporting documentation linking its reported direct material costs to its financial accounting records maintained in the normal course of business." AFA Memo at 2; see also Final Decision Memo at 7.  Commerce found this failure particularly problematic because Sidenor's direct material costs account for [[ a large ]] percent of the merchandise under consideration and only [[ a small ]] percent of Sidenor's stainless steel bar was reported as merchandise under consideration (with [[ a large ]] percent reported as sold outside of the United States and the home market). AFA Memo at 6.

Sidenor maintains that it "is of no moment" that it did not reconcile its sales directly to the costs because, "[s]ince both [sales and costs] were reconciled to the audited financial statement, they necessarily reconcile to each other." Plaintiff's Motion at 15.  This misses the point; the fact remains that Sidenor did not provide to Commerce the information necessary "to gain an understanding of Sidenor's reporting methodology." AFA Memo at 3; see also Final Decision Memo at 7.  Commerce found that Sidenor's failure to provide the requested reconciliations left it "with no support or assurance that the quantity of [stainless steel bar] reported as merchandise under consideration is complete and accurate." AFA Memo at 6.

As a result of Sidenor's failure to furnish the requested documentation, necessary information was neither on the record (19 U.S.C. § 1677e(a)(1)) nor provided in the form and

manner requested by Commerce (19 U.S.C. § 1677e(a)(2)(B)).  Further, by failing to furnish the information, Sidenor withheld information (19 U.S.C. § 1677e(a)(2)(A)) and significantly impeded the conduct of the administrative review (19 U.S.C. § 1677e(a)(2)(C)).  Accordingly, Commerce's decision to rely on facts otherwise available to calculate Sidenor's dumping margin was supported by substantial evidence and otherwise in accordance with law.

**2**
**Commerce Properly Applied Adverse Inferences When Selecting Amongst The Facts Otherwise Available Because Sidenor Did Not Act To The Best Of Its Ability**

Commerce is authorized to employ adverse inferences when selecting from the facts otherwise available if it finds that an interested party "has failed to cooperate by not acting to the best of its ability." 19 U.S.C. § 1677e(b); see also Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 ("SAA")[2] at 870 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4199.  The Federal Circuit has interpreted this language to mean that a party must "do the maximum it is able to do" to comply with Commerce's request. Nippon Steel Corporation v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

"Whether a respondent has done the maximum it was able to do to comply with Commerce's requests involves both objective and subjective inquiries." Fujian Lianfu Forestry Co. v. United States, 2009 Ct. Int'l Trade LEXIS 92, *17 (CIT 2009).  Under the objective inquiry, Commerce must demonstrate "'that a reasonable and responsible importer would have

---

[2]  The Uruguay Round Agreements Act was signed into law on December 8, 1994. The Act approved the new WTO Agreement, and the agreements annexed thereto, "resulting from the Uruguay Round of multilateral trade negotiations [conducted] under the auspices of the General Agreement on Tariffs and Trade." 19 U.S.C. § 3511(a)(1).  The Statement of Administrative Action approved by Congress to implement the Agreements is regarded as "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and [the Uruguay Round Agreements] Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations.'" Id. (quoting Nippon Steel, 337 F.3d at 1382-83). Under the subjective inquiry, Commerce must demonstrate that a respondent's failure to promptly produce the requested information "'is the result of the respondent's lack of cooperation in either: (a) failing to keep and maintain all required records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records.'" Id. at *17-18 (quoting Nippon Steel, 337 F.3d at 1382-83).

With respect to the objective component of the inquiry, "[p]arties and attorneys filing documents with the Department of Commerce have an obligation to provide complete and correct information." PAM, S.p.A. v. United States, 2009 U.S. App. LEXIS 21118, *6 (Fed. Cir. 2009). Moreover, a respondent has "'a statutory obligation to prepare an accurate and complete record in response to questions plainly asked by Commerce.'" Fujian, 2009 Ct. Int'l Trade LEXIS 92 at *24-25 (citing Tung Mung Dev. v. United States, 25 CIT 752, 758 (CIT 2001)). Here, Commerce did not request that Sidenor keep its books and records a certain way; it asked that Sidenor provide information that would assist Commerce in understanding how certain financial data related to the information contained in its normal books and records. Sidenor did not provide this information.

With respect to the subjective component of the inquiry, Commerce afforded Sidenor several opportunities to provide the requested reconciliations and documentation.[3] Because the requested information was within Sidenor's control, Commerce found that Sidenor's failure to furnish the requested information was effectively a failure to act to the best of its ability. Final Decision Memo at 12.

---

[3] For a more detailed discussion of these opportunities, see Section IV.B.1.

Sidenor disputes this finding and claims that it did act to the best of its ability. Plaintiff's

Motion at 19. In support of this claim, Sidenor focuses on "reporting methodologies, conversion

costs, cost variances, and the overall cost reconciliation." <u>Final Decision Memo</u> at 4; <u>see</u>

Plaintiff's Motion at 19-30. Sidenor ignores what Commerce characterizes as "the primary

reason for [its] finding that Sidenor did not cooperate to the best of its ability, [namely] Sidenor's

failure to provide adequate explanations and requested documentation linking its reported direct-

materials cost to cost-accounting records it maintains in the normal course of business." <u>Final</u>

<u>Decision Memo</u> at 4; <u>see also</u> <u>AFA Memo</u> at 2-5 (discussing Sidenor's failure to provide proper

data for an overall cost reconciliation and for a quantity reconciliation between reported sales

and production quantities).

Thus, Commerce's decision to apply adverse inferences when selecting from the facts

otherwise available is supported by substantial evidence.

**3**
<u>**Commerce's Authority To Calculate A Respondent's Dumping Margin On The Basis Of**</u>
<u>**Adverse Facts Available Does Not Depend On Whether It Has Conducted A Verification**</u>

Sidenor argues that Commerce cannot calculate its dumping margin on the basis of

adverse facts available because it "was not subject to, and did not fail, a verification." Plaintiff's

Motion at 10. Sidenor does not cite to any authority for this proposition.[4] <u>See id.</u> at 8-11.

---

[4] When asked at oral argument to provide citation to authority in support of this argument, Sidenor responded
that "this case is a difficult case to cite specific legal authority [for]." In fact, Sidenor appears to have abandoned
this argument. At oral argument, Sidenor clarified that "the argument is not that . . . AFA cannot be assigned in the
absence of verification. Certainly it can be. . . . But the facts here are different." In any event, the court interprets
Sidenor's failure to support its argument with citation to authority as tantamount to consent to denial of its argument.
"'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are
deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court
to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" <u>Fujian Lianfu Forestry Co.</u>
<u>v. United States</u>, 2009 Ct. Int'l Trade LEXIS 92, *53 (CIT 2009) (quoting <u>United States v. Zannino</u>, 895 F.2d 1, 17
(1st Cir. 1990)); <u>see also</u> <u>Fagersta Stainless AB v. United States</u>, 577 F. Supp. 2d 1270, 1279 n.6 (CIT 2008).
"Briefs supporting motions for judgment on the agency record filed in actions arising under 28 U.S.C. § 1581(c)
'<u>must</u> include the authorities relied on and the conclusions of law deemed warranted by the authorities.'" <u>MTZ</u>
<u>Polyfilms, Ltd. v. United States</u>, 2009 Ct. Intl. Trade LEXIS 123, *9 (quoting USCIT Rule 56.2(c)(2)) (emphasis

The antidumping statute establishes the criteria that must be met in order to justify the use of adverse facts available to calculate a respondent's dumping margin; verification is not among the criteria listed. <u>See</u> 19 U.S.C. § 1677e(a) (use of "facts otherwise available") and 19 U.S.C. § 1677e(b) (use of adverse inferences in selecting from the facts otherwise available). The applicable statute requires verification in the context of an antidumping administrative review only if a domestic party makes a timely request for verification and either no verification has been performed in the prior two administrative reviews or good cause is shown. 19 U.S.C. § 1677m(i). The applicable regulation requires verification only if a domestic party makes a timely request for verification and no verification has been performed in the prior two administrative reviews or if good cause is shown. 19 C.F.R. § 351.307(b). These conditions are absent in the challenged review: Sidenor has not demonstrated that a domestic party requested verification of its information, and this is the first administrative review of the <u>AD Order</u>. Moreover, this court has found that a respondent's act of purposefully withholding or providing misleading information is, in itself, grounds for the application of adverse facts available. <u>See</u> <u>Shanghai Taoen Int'l Trading Co. v. United States</u>, 29 CIT 189, 195, 360 F. Supp. 2d 1339, 1345 (CIT 2005).

Accordingly, Sidenor's verification argument cannot succeed.

---

added in <u>MTZ</u>). "Failure to enforce [such requirements] will ultimately deprive [the appellate system] in substantial measure of that assistance of counsel which the system assumes." <u>Carducci v. Regan</u>, 714 F.2d 171, 230 U.S. App. D.C. 80 (D.C. Cir. 1982).

**C**

**The AFA Rate Selected By Commerce Was Supported By Substantial Evidence And Otherwise In Accordance With Law**

Sidenor contends that, even if Commerce were correct in calculating its dumping margin on the basis of adverse facts available, the rate selected by Commerce is inappropriate for two reasons. First, Sidenor contends that the AFA rate was not corroborated. Second, Sidenor argues that the AFA rate is "aberrational" and "punitive."

**1**

**Commerce Properly Corroborated The AFA Rate**

Sidenor asserts that Commerce did not corroborate the AFA rate. Plaintiff's Motion at 34. This portion of Plaintiff's Motion contains no citations to authority, statutory or otherwise.[5] See id. at 34-35. According to Sidenor, "the sole basis for selecting this rate is that it was an adverse rate that applied to a company related to Sidenor in the original investigation. However, this is not a reasonable basis for corroboration." Id. at 34. Sidenor further argues that "[t]he rate is also not corroborated for time. The selected rate is from a period many years prior to the [period of review] at issue. There is no showing that it still reflects the current rate . . . ." Id. at 35. Commerce properly corroborated the AFA rate within the applicable legal framework.

Commerce is explicitly authorized to rely on "information derived from [a] previous administrative review or any other information placed on the record," including information derived from the petition, in establishing an AFA rate. PAM, S.p.A., 2009 U.S. App. LEXIS 21118 at *7 (citing 19 U.S.C. § 1677e(b)). Information from a prior segment of the proceeding (for example, the AFA rate established in the initial LTFV investigation) is characterized as "secondary information." SAA at 870, 1994 U.S.C.C.A.N. at 4199. When Commerce uses

---

[5] Plaintiff's failure to cite authority for this argument is, in effect, a consent to denial of its argument. See note 4, supra.

secondary information, it is required "to the extent practicable . . . [to] corroborate that information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c) (emphasis added). The Federal Circuit has interpreted Congress's purpose in enacting the corroboration requirement as follows:

> It is clear from Congress's imposition of the corroboration requirement in 19 U.S.C. § 1677e(c) that it intended for an adverse facts available rate to be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance. Congress could not have intended for Commerce's discretion to include the ability to select unreasonably high rates with no relationship to the respondent's actual dumping margin.

F.Lli de Cecco di Filippo Fara S. Martino S.p.A., 216 F.3d 1027, 1032 (Fed. Cir. 2000). To corroborate secondary information, Commerce must find that "the secondary information to be used has probative value." SAA at 870, 1994 U.S.C.C.A.N. at 4199. In addition, "Commerce needs to demonstrate how the selected proxy satisfies the De Cecco standard." Fujian, 2009 Ct. Int'l Trade LEXIS 92 at *14. If Commerce determines that it is not "practicable" to tie the selected AFA rate to the actual respondent, Commerce must explain why. Id. at *15.

Commerce evaluates whether secondary information has probative value by assessing its reliability and relevance. KYD, Inc. v. United States, 613 F. Supp. 2d 1371, 1378 (CIT 2009); Mittal Steel Galati S.A. v. United States, 491 F. Supp. 2d 1273, 1278 (CIT 2007) (citing Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews, 70 Fed. Reg. 54,711, 54,712–13 (September 16, 2005)). The reliability of an AFA rate is assessed by determining whether the rate was reliable when first used. See KYD, 613 F. Supp. at 1379 (citing Tianjin Mach. Imp. & Exp. Corp. v. United States, 2007 Ct. Int'l Trade LEXIS 137, *44 (CIT 2007)). The relevance of an AFA rate is measured against "'past practices in the industry in question.'"

17

Id. at 1380 (quoting D & L Supply Co. v. United States, 113 F.3d 1220, 1223-24 (Fed. Cir. 1997)) and Shanghai Taoen, 29 CIT at 197, 360 F. Supp. 2d at 1346).

In this case, Commerce stated that it "reviewed all potential rates in the history of the proceeding which could be applied to Sidenor as an [AFA] rate in this segment of the proceeding." Final Decision Memo at 15. The potential rates available for Commerce were from the initial LTFV investigation; these included the 7.7% weighted-average margin calculated for a cooperative respondent, the 25.77% all-others rate, and the 62.85% rate calculated for a non-cooperative respondent. Id. Commerce "found the rate of 62.85 percent to be reliable in the investigation" and, "[b]ecause the information was supported by source documents, . . . determine[d] that the information is still reliable." Id. at 17. Commerce found that the rate remained reliable because it has not been judicially discredited and because there was no new information that called into question its reliability. Id. at 18. With respect to relevance, Commerce evaluated whether there were any circumstances that would render the margin irrelevant. Id. According to Commerce, such circumstances might include judicial invalidation or a finding that the rate was based on another company's uncharacteristic business expense. Id. Commerce found "that [such] unusual circumstances . . . are absent in the instant review and, therefore, the selected rate retains its relevance." Id. With respect to the De Cecco standard, Commerce explained that "because Sidenor is a first-time participant in the current administrative review . . . , there are no prior weighted-average dumping margins that were ever calculated for Sidenor in prior segments of the proceeding." Id. at 19.

Thus, because Commerce found that the AFA rate applied in the initial LTFV investigation remained reliable and relevant, and because Commerce explained why it was not

practicable to demonstrate that the rate was a reasonable approximation of Sidenor's actual rate, Commerce properly corroborated the rate for use in this administrative review.

**2**
**The AFA Rate Is Neither "Aberrational" Nor "Punitive"**

Sidenor also argues that the rate selected by Commerce cannot be "aberrational" or "punitive." Plaintiff's Motion at 35.  Sidenor asserts that "if an [AFA] rate is selected, it should reasonably reflect the rate that would have applied had the data been able to be used with a reasonable additional amount to deter non-compliance." Id. (citing Shandong Huarong Gen. Group Corp. v. United States, 2007 Ct. Int'l Trade LEXIS 3 (CIT 2007)).  In addition, Sidenor asserts that "the principles underlying" the 1:1 ratio for punitive damages established in Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008), "should have guided [Commerce] in its examination of the calculated AFA rate." Plaintiff's Motion at 37.

Like the argument proffered in Section IV.C.1 above with respect to relevance, these arguments have been addressed and rejected by the court on numerous occasions. See, e.g., KYD, 2009 Ct. Int'l Trade LEXIS 15 at *27-28; PAM, S.p.A. v. United States, 577 F. Supp. 2d 1318, 1321 (CIT 2008).  The court has already determined that Shandong does not provide a numerical limit and that Commerce "is unfettered by absolute numerical limitations" when selecting an AFA rate. Universal Polybag Co. v. United States, 577 F. Supp. 2d 1284, 1301 (CIT 2008).  The Federal Circuit has unequivocally stated that "[n]othing in Exxon Shipping, a case with a very different fact pattern and legal issues, requires us to impose new limits on the discretion Congress granted to the Department of Commerce." PAM, S.p.A., 2009 U.S. App. LEXIS 21118 at *11.

19

# V
## CONCLUSION

For the above stated reasons, Plaintiff's Motion for Judgment on the Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade is DENIED and Commerce's determination in <u>Stainless Steel Bar from Spain: Final Results of Antidumping Duty Administrative Review</u>, 72 Fed. Reg. 42,395 (August 2, 2007) is AFFIRMED.

__/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: October 30, 2009
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |
|---|---|
| SIDENOR INDUSTRIAL SL, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant, | : |
| | : |
| and | : |
| | : |
| CARPENTER TECHNOLOGY CORP., et al., | : |
| | : |
| Defendant-Intervenors. | : |

Before:    WALLACH, Judge
Court No.:   07-00307

_____

## ORDER AND JUDGMENT

This case having come before the court upon the Motion for Judgment on the Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade filed by Plaintiff Sidenor Industrial SL ("Plaintiff's Motion"); the court having reviewed all papers and pleadings on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion is DENIED; and it is further

ORDERED, ADJUDGED, AND DECREED that the decision of the United States Department of Commerce in <u>Stainless Steel Bar from Spain: Final Results of Antidumping Duty Administrative Review</u>, 72 Fed. Reg. 42,395 (August 2, 2007) is hereby AFFIRMED; and it is further

ORDERED that all parties shall review the court's Opinion in this matter and shall in

writing on or before Monday, November 9, 2009 notify the court whether any information contained in the Opinion is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter.  The parties shall suggest alternative language for any portions they wish deleted.  If a party determines that no information needs to be deleted, that party shall so notify the court in writing on or before Monday, November 9, 2009.


__/s/ Evan J. Wallach____
Evan J. Wallach, Judge

Dated: October 30, 2009
      New York, New York

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                              Deputy Clerk